**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MICHAEL B.,

                         Plaintiff,

       v.                                     8:19-CV-507
                                            (DJS)

ANDREW M. SAUL, _Commissioner of_
_Social Security_,

                         Defendant.
_____

**APPEARANCES:**                  **OF COUNSEL:**

SCHNEIDER & PALCSIK       MARK A. SCHNEIDER, ESQ.
Attorney for Plaintiff
57 Court Street
Plattsburgh, New York 12901

U.S. SOCIAL SECURITY ADMIN.    TIMOTHY S. BOLEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
J.F.K. Federal Building - Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**DANIEL J. STEWART**
**United States Magistrate Judge**

### MEMORANDUM-DECISION AND ORDER[1]

     Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a

decision by the Commissioner of Social Security that Plaintiff was not disabled for

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  _See_ Dkt. No. 5 & General Order 18.

purposes of disability insurance benefits.  Dkt. No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 11 & 15.  For the reasons set forth below, Plaintiff's Motion is **granted,** Defendant's Motion is **denied**, and the case is remanded for further proceedings.

## I. RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born in 1971, making him 47 years old on the date of the ALJ's decision.  Dkt. No. 8, Admin. Tr. ("Tr.") at pp. 31, 139.  Plaintiff is a high school graduate, who owned and operated his own plumbing business for approximately twenty years.  Tr. at pp. 31, 41-42, 148-149.  In his application for benefits, Plaintiff alleged disability based upon "anterior cervical discectomy and fusion C5-C6 C6-C7,[2] arthritis, diabetes, and depression."  Tr. at p. 157.

### B.  Procedural History

Plaintiff applied for disability insurance benefits on September 15, 2016.  Tr. at p. 139.  He alleged a disability onset date of July 1, 2014.  *Id*.  Plaintiff's application was initially denied on December 27, 2016, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp. 66-79, 83-86.  Plaintiff appeared at a hearing before ALJ David F. Neumann on June 13, 2018, at which he and

---

[2]  As discussed herein, Plaintiff contends in his brief that he is also disabled due to the related spinal and nerve impairments of meralgia paresthetica and cervical radiculopathy.  Dkt. No. 11 at pp. 24-25.

a vocational expert ("VE") testified.  Tr. at pp. 27-65.  On August 17, 2018, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  Tr. at pp. 10-26.  On April 24, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. at pp. 1-7.

### C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law.  First, the ALJ found that Plaintiff last met the insured status requirements on June 30, 2016 and had not engaged in substantial gainful activity from his alleged onset date of July 1, 2014 through his date last insured.  Tr. at p. 15.  Second, the ALJ found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease ("COPD"), status post cervical discectomy, lumbar spondylosis, and obesity.  Tr. at pp. 15-16.  Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  Tr. at p. 16.  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") through the date last insured to perform light work except:

> [he] could lift and carry 10 pounds frequently and 20 pounds occasionally. He could sit for seven hours, with normal breaks, in an eight-hour workday and stand and/or walk one hour, with normal breaks, in an eight-hour workday.  He could perform pushing and pulling motions with his upper and lower extremities within the aforementioned weight restrictions.  He should avoid concentrated pollutants and temperature extremes.   He could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl.

3

Tr. at p. 17.  Fifth, the ALJ found that Plaintiff was unable to perform any past relevant work through the date last insured.  Tr. at p. 21.  Sixth, the ALJ found that Plaintiff is in the "younger individual age" category, has at least a high school education, and is able to communicate in English.  *Id.*  Seventh, the ALJ relied upon the VE testimony and found that there was work existing in significant numbers in the national economy that Plaintiff could have performed through the date last insured.  Tr. at pp. 21-22.  The ALJ, therefore, concluded that Plaintiff is not disabled.  Tr. at pp. 22-23.

### D.  The Parties' Positions

Plaintiff makes four arguments in support of reversal.  First, he argues that the ALJ failed to properly evaluate the record evidence, and in particular, failed to assign proper weight to the medical opinion evidence.  Dkt. No. 11, Pl.'s Mem. of Law at pp. 18-24.  Second, Plaintiff argues that the ALJ erred at Step Two by not considering Plaintiff's meralgia paresthetica[3] and cervical radiculopathy to be severe impairments.  *Id.* at pp. 24-25.  Third, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's credibility and assess his subjective allegations regarding his functional limitations arising from pain and other symptoms.  *Id.* at pp. 25-28.  Finally, Plaintiff argues that the ALJ failed to properly evaluate the effect of Plaintiff's obesity on his ability to work.  *Id.* at pp. 28-32.  Plaintiff contends that each of these errors resulted in

---

[3] Meralgia paresthetica is a condition characterized by tingling, numbness and burning pain in the outer thigh, caused by compression of the nerve that supplies sensation to the skin.  Meralgia Paresthetica, MAYOCLINIC, *available at* https://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/symptoms-causes/syc-20355635 (last accessed Sept. 18, 2020).

an erroneous disability determination. *Id.* at p. 32.  Defendant counters that the ALJ properly evaluated the record evidence and that his determination is supported by substantial evidence. *See generally* Dkt. No. 15, Def.'s Mem. of Law.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is

> whether, based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations. If the
> claimant has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age, education,
> and work experience; the [Commissioner] presumes that a claimant who
> is afflicted with a "listed" impairment is unable to perform substantial
> gainful activity. Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's severe impairment, he
> has the residual functional capacity to perform his past work. Finally, if
> the claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant could perform.
> Under the cases previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the [Commissioner] must prove the
> final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758

F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can

be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S.

20, 24 (2003).

## III. ANALYSIS

### A. The ALJ's Step Two Determination

At Step Two of the sequential analysis, "the ALJ must determine whether the

claimant has a 'severe medically determinable physical or mental impairment.'" *Pepper*

*v. Comm'r of Soc. Sec*., 2015 WL 3795879, at *2 (N.D.N.Y. June 17, 2015) (quoting 20

C.F.R. § 404.1520(a)(4)(ii)). A condition will be found not severe when it does not

significantly impact or limit the individual's ability to do basic work. *Id*.; *see also Royal*

*v. Astrue*, 2012 WL 5449610, at *5 (N.D.N.Y. Oct. 2, 2012), *report and*

*recommendation adopted*, 2012 WL 5438945 (N.D.N.Y. Nov. 7, 2012).

Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008)); *see also* 20 C.F.R. § 404.1522(b). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [ ] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor v. Astrue*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. *Taylor v. Astrue*, 32 F. Supp. 3d at 265 (citing *Miller v. Comm'r of Soc. Sec.*, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

The failure to find a specific impairment severe at Step Two is harmless where (a) the ALJ concludes there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides an explanation showing he adequately considered the evidence related to the impairment that is ultimately found non-severe. *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), *report and recommendation adopted*, 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also*

*Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 798 (2d Cir. 2013) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

Plaintiff notes that he was diagnosed with meralgia paresthetica in September 2015, after complaining of pain and numbness in his left leg.  Tr. at p. 320.  However, "[t]he 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe."  *Bergeron v. Astrue*, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).  "The severity of an impairment is not determined merely by diagnosis, but by the limitations imposed by the impairment." *Tillis v. Colvin*, 2016 WL 8674672, at *2 (N.D.N.Y. Mar. 11, 2016).  In this case, Plaintiff has not identified any functional limitations attributable to meralgia paresthetica, either during the administrative process or his brief before this court.  Moreover, there is no evidence in the record that this impairment imposes limitations greater than those accounted for in the RFC established by the ALJ.  *See Sherman v. Comm'r of Soc. Sec.*, 2015 WL 5838454, at *5 (N.D.N.Y. Oct. 7, 2015).  Therefore, the Court will not find any error in the ALJ's failure to label meralgia paresthetica to be a severe impairment.

In any case, the ALJ specifically discussed the September 2015 diagnosis of meralgia paresthetica on the left leg as part of the RFC determination, citing the same treatment notes that Plaintiff relies on in his memorandum of law.  Tr. at pp. 18, 318-324.  He also discussed the recommended treatment of weight loss and smoking cessation. Tr. at pp. 18, 320.  Therefore, even if the ALJ had erred by excluding meralgia paresthetica from the list of severe impairments, such error would be harmless because the ALJ specifically considered the impairment as part of the RFC determination. *Fuimo v. Colvin*, 948 F. Supp. 2d at 269-70.

Plaintiff also contends that the ALJ incorrectly characterized Plaintiff's spinal impairments as "status post cervical discectomy," although Plaintiff's surgery did not occur until November 30, 2016, five months after his date last insured. Tr. at pp. 15, 352-354.  Plaintiff contends that the ALJ should have instead identified Plaintiff's back impairment as cervical nerve impingement and radiculopathy.  Although the ALJ erred regarding the timing of Plaintiff's back surgery,[4] Plaintiff has not identified any harm that resulted from this error.  Indeed, the ALJ discussed Plaintiff's cervical nerve impingement and radiculopathy at length in his decision, including diagnostic tests that followed the initial diagnosis, Plaintiff's response to pain medication, and the eventual necessity of surgery.  Tr. at pp. 17-20.  Given that the ALJ expressly considered the potential limitations associated with Plaintiff's cervical spine impairments as part of the

---

[4] As part of the RFC analysis, the ALJ recognized that Plaintiff's surgery did not occur until November 2016.  Tr. at p. 21.

RFC determination, the ALJ's failure to accurately name them as severe impairments at Step Two was harmless. *Fuimo v. Colvin,* 948 F. Supp. 2d at 269-70.

The ALJ's Step Two analysis is therefore not a basis for remand.

### B.  The ALJ's Consideration of Plaintiff's Obesity

Plaintiff is five feet nine inches tall and weighed about 285 pounds on the date of his application for benefits.  Tr. at p. 31.  His Body Mass Index ("BMI") during this period was over 40, qualifying him as obese.[5]  Tr. at pp. 18, 240, 261, 267.  Plaintiff argues that the ALJ did not explain how he evaluated the effect of obesity upon Plaintiff's ability to work.

Under SSR 02-1p, obesity may be considered "severe" - and thus medically equal to a listed disability - if "alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *See* SSR 02-1p, Titles II and XVI: Evaluation of Obesity, 2002 WL 34686281, at *4 (Sept. 12, 2002).   The ruling "instruct[s] adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." *Id*. at *1; *accord Dieguez v.*

---

[5]  BMI is a measure of body fat based on height and weight that applies to adult men and women.  A BMI over 30 is considered obese.  Calculate Your Body Mass Index, NATIONAL HEART, LUNG, AND BLOOD INSTITUTE, *available at* https://www.nhlbi.nih.gov/health/educational /lose_wt/BMI/bmicalc.htm  (last accessed Sept. 18, 2020).  A BMI of 40 or higher can be medically categorized as "extreme" or "severe" obesity.  Adult Body Mass Index (BMI), CENTERS FOR DISEASE CONTROL AND PREVENTION, *available at* https://www.cdc.gov/obesity/adult /defining.html (last accessed Sept. 18, 2020).

*Berryhill*, 2017 WL 3493255, at *3 (S.D.N.Y. Aug. 15, 2017); *Battle v. Colvin*, 2014 WL 5089502, at *5 (W.D.N.Y. Oct. 9, 2014).   "Obesity is not in and of itself a disability," however, and courts have held that "an ALJ's failure to explicitly address a claimant's obesity does not warrant remand."   *Guadalupe v. Barnhart*, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005) (citations omitted).   "'Conversely, the ALJ's obligation to discuss a claimant's obesity alone, or in combination with other impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a significant factor in relation to the claimant's ability to perform work related activities.'"  *Battle v. Colvin*, 2014 WL 5089502, at *5 (quoting *Farnham v. Astrue*, 832 F.Supp.2d 243, 261 (W.D.N.Y. 2011)) (citing cases); *accord Cahill v. Colvin*, 2014 WL 7392895, at *27 (S.D.N.Y. Dec. 29, 2014).

Plaintiff's memorandum of law focuses on a series of cases that remanded because the ALJ never addressed the impact of obesity on a claimant's other impairments. *See Shutts v. Colvin*, 2013 WL 4080601, at *5 (N.D.N.Y. Aug. 13, 2013)*; Garcia v. Astrue*, 10 F. Supp.3d 282, 297 (N.D.N.Y. 2012); *Kasmire v. Astrue*, 2008 WL 5482786, at *14 (W.D.N.Y. Dec. 18, 2008).   In this case, however, the ALJ's decision demonstrates an adequate consideration of Plaintiff's obesity.  The decision not only references the requirements of SSR 02-01, but also discusses record evidence regarding Plaintiff's obesity.  Tr. at p. 16.  For example, the ALJ cited March 2015 treatment notes assessing Plaintiff's weight and BMI in connection with an examination

12

of Plaintiff's musculoskeletal development, mobility, and strength.  Tr. at pp. 18, 240.

The ALJ also discussed September 2015 treatment notes finding that weight loss would

be beneficial to the treatment of Plaintiff's lower back pain and left leg paresthetica.  Tr.

at p. 320.  In addition, the ALJ cited other treatment notes that discussed the impact of

Plaintiff's weight on his impairments and functional limitations in calculating his RFC.

Tr. at pp. 261-262, 272.  *See Martin v. Astrue*, 2008 WL 4186339, at *3 (N.D.N.Y. Sept.

9, 2008) (finding that Plaintiff's obesity was understood to have been factored into RFC

determination when the ALJ relied upon physical limitations found in reviewing

doctors' notes that discussed obesity).

Thus, it is evident that the ALJ considered Plaintiff's obesity at Steps Four and

Five of the disability determination, and Plaintiff has not identified, or even suggested,

any further functional limitations arising from obesity.  Therefore, the ALJ's assessment

of the impact of obesity on Plaintiff's functional limitations was supported by substantial

evidence.  *See Mancuso v. Astrue*, 361 Fed. Appx. 176, 178 (2d Cir. 2010) (ALJ did not

err in consideration of obesity where "there [was] no factual basis for thinking that 'any

additional and cumulative effects of obesity' limited [the claimant's] ability to perform

light work") (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00Q).

### C.  ALJ's Evaluation of Medical Opinion Evidence

With respect to Plaintiff's RFC, the ALJ's decision discussed opinions from Dr.

Laurel Rosenthal, Plaintiff's primary care physician; Nurse Practitioner ("NP") Brian

Lecuyer, a pain management specialist; and Dr. S. Putcha, a state agency consultant who

reviewed Plaintiff's medical records.  Tr. at pp. 19-20.  Plaintiff contends that the ALJ should have assigned greater weight to the Rosenthal and Lecuyer opinions.[6]

Pursuant to the "treating physician rule" set out in 20 C.F.R. § 404.1527(c),[7] "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "'explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the

---

[6] Plaintiff specifically argues that "the ALJ erred in dismissing the opinions of Dr. Rosenthal and NP Lecuyer." Pl.'s Mem. of Law at 23. Since the ALJ actually assigned some weight, albeit minimal, to these opinions, the Court will interpret this argument as one in favor of assigning greater weight to these two opinions, and lower weight to the opinion of state agency consultant Dr. Putcha.

[7] For claims filed on or after March 27, 2017, a new set of regulations apply. These new regulations do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a). But since Plaintiff filed his claim on September 15, 2016, the treating physician rule applies. *See Claudio v. Berryhill*, 2018 WL 3455409 at *3 n.2 (D. Conn. July 18, 2018) ("Since [the plaintiff] filed her claim before March 27, 2017, I apply the treating physician rule under the earlier regulations.").

physician is a specialist.'"  *Greek v. Colvin*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527 is required.  *Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d Cir. 2013) (citing *Halloran v. Barnhart*, 362 F.3d at 31-32).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

### 1.  Dr. Rosenthal

On July 20, 2017, Dr. Rosenthal completed a form entitled "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination."  Tr. at pp. 342-343.  She completed a physical examination of Plaintiff on the same day.  *Id.*  Dr. Rosenthal described Plaintiff as suffering from cervical spinal stenosis, lumbar pain with radiculopathy, and COPD since at least 2014.  Tr. at p. 342.  She also opined that each of these impairments were permanent.  *Id.*  In assessing functional limitations on a check-box form, Dr. Rosenthal opined that Plaintiff was "very limited" in his ability to walk, stand, sit, lift, carrying, push, pull, bend, and climb stairs.  Tr. at p. 343.  She found him to be "moderately limited" in the use of his hands, with no limitations in his ability to see, hear, and speak.

15

*Id.*  Dr. Rosenthal also opined that Plaintiff would be very limited in his ability to function in a work setting at a consistent pace, due to his physical limitations.  *Id.*

In a brief narrative section, Dr. Rosenthal opined that Plaintiff "can't stay seated, can't walk or stand . . . . Breathing limits physical work. . . . Sleeping problems due to pain. . . ."  Tr. at p. 343.  She recommended referral to a weight loss program to address some of these problems.  *Id.*

The ALJ assigned "very little weight" to Dr. Rosenthal's opinion.  Tr. at p. 20. He noted that the opinion was issued almost a year after the date last insured.  *Id.*  This was a valid consideration, despite Dr. Rosenthal's lengthy treating relationship with Plaintiff.  Although Dr. Rosenthal found that Plaintiff had originally been diagnosed with back pain and spinal stenosis in 2014, she provided no indication when the functional limitations set out in her opinion first arose.  *See Murphy v. Comm'r of Soc. Sec.*, 2017 WL 8895352, at *9 (N.D.N.Y. Oct. 24, 2017) (finding that ALJ "properly noted the timing" of physician's opinions where the opinions "did not contain any notation indicating that the limitations contained therein were retrospective" to the period at issue); *Martin v. Colvin*, 2016 WL 1383507, at *5 (N.D.N.Y. Apr. 7, 2016) ("the ALJ concluded that the later evidence submitted in this case did not, in fact, demonstrate that [plaintiff's] condition during the time period at issue here was of greater severity than the then-extant medical record had previously indicated").

The ALJ also discounted Dr. Rosenthal's opinion because it was "nonspecific in nature."  Tr. at p. 20.  This, however, is often an insufficient justification to assign lesser

16

weight to a treating source opinion, without first attempting to develop the record.  *See Alonda W. v. Saul*, 2020 WL 880874, at *10 (N.D.N.Y. Feb. 24, 2020) (failure to provide function-by-function analysis was not good reason to discount treating neurologist's opinion); *Parker v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4386050, at *8 (S.D.N.Y. Sept. 13, 2019) (collecting cases and holding that a treating physician's failure to provide a function-by-function analysis does not provide a "good reason" for discounting his opinion, given an ALJ's duty to develop the record).  "An ALJ has an affirmative duty to develop the administrative record . . . even when the claimant is represented by counsel because social security disability hearings are non-adversarial." *Parker v. Comm'r of Soc. Sec.*, 2019 WL 4386050, at *5 (citing *Moran v. Astrue*, 569 F.3d 108, 112-13 (2d Cir. 2009)).  This duty to develop the record may include re-contacting the treating physician "[i]f the opinion of [the] treating physician is not adequate." *Id.* (citing *Mitchell v. Astrue*, 2009 WL 3096717, at *17 (S.D.N.Y. Sept. 28, 2009)).

Here, this fact, together with the ALJ's failure to fully address the specific elements of the treating physician rule, warrant remand for further consideration of Dr. Rosenthal's opinion.  In this case there was no explicit consideration of the treating physician rule in the ALJ's opinion.  For example, while stating that the opinion "did not provide findings to support the limitations" suggested, Tr. at p. 20, the ALJ did not specifically discuss the extent to which Dr. Rosenthal's treatment records did or did not support her opinion, and generally limited the analysis to Dr. Rosenthal's Medical

Source Statement.  *Id.*  The ALJ's failure to evaluate Dr. Rosenthal's opinion in the specific context of her role as a treating physician is error warranting remand.

The Second Circuit has made clear that ALJs "must explicitly consider" each of the relevant factors.  *Greek v. Colvin*, 802 F.3d at 375.  In this case, the ALJ did not do so.  The failure to even discuss Dr. Rosenthal's role as a treating physician alone is a basis for remand.  *Ferraro v. Saul*, 806 Fed. Appx. 13 (2d Cir. 2020) (summary order) (directing remand when the ALJ did not "explicitly consider . . . the frequency, length, nature, and extent of treatment").  The ALJ also did not specifically address the evidence in Plaintiff's medical records that was consistent with and supported Dr. Rosenthal's opinion.

In addition, the ALJ's cursory discussion of Dr. Rosenthal's opinion failed to otherwise provide "good reasons" for discounting it.  *Ferraro v. Saul*, 806 Fed. Appx. at *14-15 ("[T]he 'failure to explicitly apply the *Burgess* factors when assigning weight at step two is a procedural error,' and unless the ALJ has 'otherwise provided good reasons for its weight assignment, we [will be] unable to conclude that the error was harmless and [will] consequently remand for the ALJ to comprehensively set forth its reasons.'") (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019)).  An error in weighing a physician's opinion may be considered harmless where proper consideration of that opinion would not change the outcome of the claim.  *Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)); *Camarata v. Colvin*, 2015 WL 4598811, at *16 (N.D.N.Y.

18

July 29, 2015) (denying the request for remand because application of the correct legal standard would not change the outcome).  Here, however, relevant factors, including the frequency, length, nature and extent of treatment and the consistency of the opinion with the medical records were not meaningfully analyzed.  Such an error cannot be deemed harmless when proper application of the treating physician rule may have led to a different conclusion.  *Schall v. Apfel*, 134 F.3d 496, 504-05 (2d Cir. 1998) (ALJ's failure to adhere to the Regulations regarding the weight to be given to the opinion of a treating physician was not harmless, in part because "application of the correct legal standard does not lead inexorably to a single conclusion"); *Burgess v. Colvin*, 2016 WL 7339925, at *13 (S.D.N.Y. Dec. 19, 2016) (error not harmless and remand warranted when ALJ provided only "minimal discussion" of treating physician factors).

### 2. Nurse Practitioner Brian Lecuyer

On May 15, 2018, NP Lecuyer completed a form entitled, "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)."  Tr. at pp. 433-435.  This opinion is "not a treating source subject to the treating physician rule because a nurse practitioner is not an acceptable medical source."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009).  Lecuyer opined that Plaintiff could frequently (1/3 to 2/3 of an eight hour workday) lift and carry less than ten pounds, and could occasionally (no more than 1/3 of the workday) lift and carry ten pounds.  Tr. at p. 433.  NP Lecuyer also opined that the most Plaintiff would be able to stand or walk during the workday was less than two hours, and the most he could sit was about two hours.  *Id*.  He further opined that

Plaintiff would need to lie down about six hours during the workday in order to relieve pain or for other reasons, would need the opportunity to shift at will from sitting or standing/walking, and would sometimes need to lie down at unpredictable intervals during the workday.  *Id.*

In NP Lecuyer's opinion, Plaintiff could never climb stairs or ladders, but could occasionally twist, stoop, and crouch.  Tr. at p. 434.  He also opined that Plaintiff's impairments affected his gross manipulation and his ability to push and pull.  *Id.*  Due to those impairments, NP Lecuyer anticipated that Plaintiff would be absent from work more than three times per month.  *Id.*  When presented with several options to describe Plaintiff's pain, NP Lecuyer chose "[p]resent to such an extent as to be distracting to adequate performance of daily activities or work."  Tr. at p. 435.  In similar fashion, he opined that physical activity, such as walking, standing, and bending "greatly increases pain causing abandonment of task related to daily activities or work," and that medication impacted Plaintiff's work ability to the extent that "some limitations are present, but will not create serious work problems."  *Id.*

The ALJ assigned "little weight" to NP Lecuyer's opinion.  Tr. at p. 20.  He provided several reasons for discounting the opinion.  *Id.*  He noted that the opinion was provided almost two years after the date last insured, and that the limitations described therein were not consistent with the record evidence either before or after that date.  Tr. at pp. 20, 433-435.

20

After careful review, this court concludes that the ALJ had substantial evidence for the weight that he assigned to NP Lecuyer's opinion.  NP Lecuyer is not an acceptable medical source; as such, it was thus within the ALJ's discretion to determine what weight to give to Mr. Lecuyer's opinion, and he sufficiently explained his reasoning for assigning the opinion limited weight.  *See Barnaby v. Comm'r of Soc. Sec.*, 2018 WL 4522057, at *7 (N.D.N.Y. June 6, 2018) (quoting *Genier v. Astrue*, 298 Fed. Appx. 105, 108 (2d Cir. 2008)) ("[A]n ALJ is 'free to consider' statements of other sources, such as nurse practitioners, in making her overall assessment; however, 'those opinions do not demand the same deference as those of a treating physician'").  Although NP Lecuyer is not an acceptable medical source, the ALJ could still consider his opinion "when determining severity of impairments and how they affect individual function."  *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 194 (N.D.N.Y. 2019).  However, the record shows that NP Lecuyer's opinion is of limited utility in this regard.

To begin with, NP Lecuyer first began treating Plaintiff on July 10, 2016, and his notes describe significant changes in Plaintiff's condition that do not reflect Plaintiff's condition between September 2014 and June 2016.  For example, when Plaintiff commenced treatment with NP Lecuyer, his primary complaint was cervical spine pain, which was treated by epidural injection.  Tr. at p. 312.  When the epidural injection did not provide lasting pain relief, Plaintiff decided to have back surgery.  Tr. at p. 349. Following his surgery in November 2016, Plaintiff had "nearly immediate relief of much

21

of his arm symptoms" but some lingering neck pain.  Tr. at p. 355.  In April 2017, Plaintiff reported that "he continues to enjoy great benefit from the surgery, no symptoms to his arms/hands that were previously terrible.  Most of the time has no neck pain but once in a while will get a small sharp pain to his neck."  Tr. at p. 357.  His surgeon, Dr. Jian Shen, described Plaintiff as "doing exceptionally well" four months after the surgery.  *Id*.

Later visits to NP Lecuyer focused on Plaintiff's lumbar spine pain, rather than the cervical spine pain that he suffered during the period relevant to this claim.  In August 2017, Plaintiff reported that his lumbar spine pain reached "10/10" without medication, but that he walked for exercise and stretched as much as possible.  Tr. at p. 364.  In November 2017, Plaintiff reported that he was able to complete his activities of daily living and self-hygiene but could only stand for five minutes at a time.  Tr. at p. 362.  Again, Plaintiff's primary complaint was lower back or lumbar spine pain.  *Id*.  In December 2017, Dr. Rosenthal characterized this lower back pain as one that "flares on reclining to 45 degrees."  Tr. at p. 426.  During a visit with NP Lecuyer in February 2018, Plaintiff still reported lower back pain that made it difficult to stand for more than fifteen minutes, or walk more than two hundred feet at one time, but also reported that he was able to do household chores and perform personal care independently, taking frequent breaks as needed.  Tr. at p. 360.

In addition to the timing issue, NP Lecuyer provided no narrative that would explain the medical findings that supported his opinion and relied entirely on the pre-

22

printed options on the reporting form.  "[C]ourts have routinely recognized the failure

to provide a requested narrative explanation on a check box form as a legitimate reason

for affording a treating source opinion limited weight."  *See*, *e.g.*, *Z.J.F. by Conkling v.*

*Comm'r of Soc. Sec.*, 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018) (citing *Camille*

*v. Colvin,* 652 Fed. Appx. 25, 27 (2d Cir. 2016)); *Jones v. Comm'r of Soc. Sec.,* 2016

WL 11477508, at *10 (N.D.N.Y. Aug. 8, 2016), *report and recommendation adopted*,

2016 WL 4991605 (N.D.N.Y. Sept. 19, 2016).

Based on the analysis above, this Court concludes that the ALJ erred in failing to

properly evaluate the opinion of Dr. Rosenthal, but not that of NP Lecuyer.  The matter,

therefore, is remanded for further consideration of Dr. Rosenthal's opinion consistent

with the treating physician rule.

### D. The ALJ's Consideration of Plaintiff's Subjective Complaints

The ALJ concluded that Plaintiff's subjective statements "concerning the

intensity, persistence and limiting effects of these symptoms are not entirely consistent

with the medical evidence and other evidence in the record."  Tr. at p. 16.  Plaintiff

argues that the ALJ erred by considering evidence that Plaintiff had still worked as a

plumber after the alleged onset date, and by failing to cite Plaintiff's lengthy work

history prior to his application for benefits as a bolster to his credibility.  Pl.'s Mem. of

Law at p. 26.  Plaintiff also argues that the ALJ had an obligation to further develop the

record before concluding that Plaintiff received minimal treatment for his back injury

prior to July 2015.

Although the Commissioner recently eliminated the use of the word "credibility" from departmental policy statements, the ALJ remains obligated to "carefully consider all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including daily activities and the location, duration, frequency, and intensity of their pain or other symptoms." *Debra T. v. Comm'r of Soc. Sec.*, 2019 WL 1208788, at *9 (N.D.N.Y. Mar. 14, 2019) (quoting *Del Carmen Fernandez v. Berryhill*, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (internal quotations and alterations omitted)). The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [his] ability to work.'" *Barry v. Colvin*, 606 Fed. Appx. 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original). If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 Fed. Appx. 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's

daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In this case, the ALJ was clearly aware of his obligations to evaluate Plaintiff's subjective complaints, and the Court finds that none of the issues raised by Plaintiff merit remand.  The ALJ was presented with conflicting evidence regarding Plaintiff's ability to work as a plumber after his alleged onset date.  The "Social History" section of Dr. Rosenthal's treatment notes repeatedly state that Plaintiff "now works as a plumber" who "[d]oes heavy lifting in his work."  Tr. at pp. 239, 261, 266, 271.  Plaintiff reasonably argues that this is a clerical error that was never updated to reflect that Plaintiff was physically unable to perform his long-time profession.  However, the ALJ also considered Dr. Rosenthal's May 12, 2016 notation that Plaintiff "is back at work on the days he can manage the pain getting there."  Tr. at p. 285.

When the ALJ questioned Plaintiff at the June 13, 2018 administrative hearing about work performed after his alleged onset date, Plaintiff testified that it had been over a year since he had done some minor plumbing work, such as sink or toilet repair, for friends or family.  Tr. at pp. 34-36.  He testified that he was generally able to lift between fifteen to twenty pounds, and that these jobs required him to lift, carry, push, or pull less

25

than fifteen pounds.  Tr. at pp. 31, 36.  These plumbing projects typically required one to two hours of work at the most.  Tr. at pp. 36-37.  Plaintiff estimated that he had performed less than ten of these types of jobs per year and would often go several weeks or a month between jobs.  Tr. at p. 36.  Plaintiff also testified that although he had not had significant earnings since 2013, he had not turned in the state tax certificate for his business and closed his business bank account until 2015 or 2016.  Tr. at pp. 35, 42, 47.

The ALJ's decision only briefly mentioned Plaintiff's twenty-year work history prior to his application for benefits, and did not reference it in the evaluation of Plaintiff's testimony.  Tr. at p. 15.  That omission alone would not merit remand.  "Although a good work history may be deemed probative of credibility . . . it bears emphasizing that work history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony."  *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998).  Here, the ALJ properly considered a number of other factors when assessing Plaintiff's subjective complaints of pain and other functional limitations, including the testimony's consistency with the medical evidence, Plaintiff's daily activities, and the opinion evidence.  Tr. at pp. 17-21; *Wavercak v. Astrue*, 420 Fed. Appx. 91, 94 (2d Cir. 2011) ("That [the claimant's] good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's decision.").

Plaintiff has provided an addendum to his brief that includes treatment notes dating as far back as 2006.  Pl.'s Mem. of Law at pp. 34-47.  Plaintiff recognizes that

most of the fourteen pages provided to the court are illegible, although some reference "pain" and an MRI of the lumbar spine.  Pl.'s Mem. of Law at p. 26.  None of those documents were provided to the ALJ or the Appeals Council.  Plaintiff requests that the Court consider these documents not for their probative value, but as evidence that such additional records were available if the ALJ had made an effort to obtain them before discounting Plaintiff's testimony.

This Court may not consider evidence outside the record in determining whether the Commissioner's decision was supported by substantial evidence.  *See* 42 U.S.C. § 405(g) (requiring decision "upon the pleadings and transcript of the record"); *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) ("In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard.").  A court may remand a case to the Commissioner to consider additional evidence "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).  Plaintiff has made no such showing here, and instead asks the court to find that the existence of earlier records demonstrates that the ALJ erred by failing to obtain such records before evaluating Plaintiff's testimony.

Defendant correctly points out that the Second Circuit recently addressed this issue in *Bushey v. Colvin* where the court held:

> To the extent [Plaintiff] seeks remand on the ground that the
> Commissioner failed adequately to develop the record, that argument is
> meritless. The Commissioner was required to "develop a complete
> medical history of at least the preceding twelve months" from [Plaintiff's]
> application date, i.e., through January 2010. 42 U.S.C. § 423(d)(5)(B);
> see also 20 C.F.R. § 404.1512(d)(2) ("By 'complete medical history,' we
> mean the records of your medical source(s) covering at least the 12 months
> preceding the month in which you file your application."). [Plaintiff] has
> not pointed to any evidence subsequent to that date that was not included
> in the record but could have influenced the Commissioner's decision.
> Moreover, although the Commissioner is required "to gather such
> information for a longer period if there was reason to believe that the
> information was necessary to reach a decision," that obligation is lessened
> where, as here, the claimant is represented by counsel who makes
> insufficient efforts to incorporate earlier records, and, in any event, we
> find nothing in the record that would have given the Commissioner reason
> for such a belief. *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d
> Cir.1998).

*Bushey v. Colvin*, 607 Fed. Appx. 114, 115-116 (2d Cir. 2015).

In this case, the record before the ALJ included material dating back more than

twelve months prior to Plaintiff's September 15, 2016 application for benefits. Tr. at

pp. 139-142, 238. During the administrative hearing, the ALJ confirmed the alleged

onset date of July 1, 2014, and gave Plaintiff, represented by counsel, an opportunity to

seek supplemental documents or otherwise object to the closing of the record. Tr. at pp.

29-31. Plaintiff's counsel even raised the possibility of amending the onset date to April

2015 to better correspond to the record. Tr. at p. 42. Therefore, this Court finds that the

ALJ satisfied his obligations under the regulations, as interpreted by *Bushey*.

Overall, the ALJ identified substantial evidence to conclude that Plaintiff's

subjective complaints were not consistent with the record evidence, including Plaintiff's

hearing testimony and his reports to medical providers.   Doing so was not only consistent with, but required by, SSR 16-3p which states that the Social Security Administration "will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances."   Soc. Sec. Ruling 16-3p, 2016 WL 1119029, at *8 (March 16, 2016).   While Plaintiff points to other evidence in the record, it was ultimately for the ALJ, not the Court to resolve such evidentiary conflicts. *Schlichting v. Astrue,* 11 F. Supp. 3d 190, 206 (N.D.N.Y. 2012) (quoting *Carroll v. Sec'y of Health and Human Servs.,* 705 F.2d 638*,* 642 (2d Cir. 1983))*.*

In summary, while the Court concludes that several of the issues raised by Plaintiff lack merit, remand is necessary here on the limited issue of the ALJ's consideration of Dr. Rosenthal's opinion under the treating physician rule.   The Court expresses no opinion as to what weight should be afforded to that opinion after proper review or as to the ultimate question of disability.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **VACATED** and **REMANDED** pursuant to Sentence Four of section 405(g) for further proceedings; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated:  September 24, 2020
          Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

30